Case 1:14-cv-01783-PAE   Document 6   Filed 06/11/14   Page 1 of 8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                          :

   TUBE CITY IMS, LLC,                            :

                                  :

                          Petitioner,    :      14 Civ. 1783 (PAE)
               -v-                  :

                                  :      <u>OPINION & ORDER</u>

   ANZA CAPITAL PARTNERS, LLC,     :

                                  :

                       Respondent.   :

                                  :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

On March 14, 2014, plaintiff Tube City IMS, LLC ("Tube City") commenced this action, petitioning the Court pursuant to Section 9 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9, to confirm the February 19, 2014 arbitration award ("Award") issued against respondent Anza Capital Partners, LLC ("Anza"). Dkt. 2 ("Petition"). On April 8, 2014, the Court directed Anza to file its opposition by April 23, 2014. Dkt. 4. As of this date, Anza has not opposed Tube City's petition.

For the reasons that follow, Tube City's petition to confirm the Award is granted.

I.    **Background**[1]

On March 9, 2010, Tube City and Anza agreed to enter into a contract for the sale and purchase of certain scrap metal goods. Petition Ex. A ("Agreement"). Under the Agreement, Tube City purchased the goods from Anza, who then shipped them to Taiwan from Puerto Rico and the Dominican Republic. Petition ¶ 12. In April 2010, Anza provided Tube City with three sales invoices, totaling $90,703.94. *Id.* ¶ 13. In May 2010, Tube City paid Anza $90,703.94. *Id.*

---

[1] The facts are drawn from Tube City's Petition to Confirm Arbitration Award and the attached exhibits. Dkt. 2.

¶ 14.  In June 2010, Tube City inadvertently paid Anza another $90,703.94.  *Id.* ¶ 15.  Tube City

attempted to recover the duplicate payment from Anza, but was unsuccessful.  *Id.* ¶ 16.

Article 13 of the Agreement contains an arbitration clause, stating that any unresolved

disputes between the parties "shall be submitted to the International Chamber of Commerce in

New York."  *See* Agreement at 4.  The clause further states that the "losing party will pay the

arbitration fee" and that the "award of arbitration shall be final and binding on both parties."  *Id.*

On October 5, 2012, Tube City filed a request for arbitration against Anza, seeking to

recover $90,703.94 plus costs and fees.  Petition Ex. B.  On November 14, 2012, Anza filed an

answer.  *Id.*  On August 1, 2013, an arbitration hearing was held in Manhattan, New York before

a tribunal consisting of a single arbitrator, Emma Lindsay, Esq. of the law firm, Simpson

Thacher & Bartlett LLP.  Petition ¶¶ 20–21.  Both Tube City and Anza appeared and participated

before the arbitration tribunal.  Pursuant to Article 12 of the Agreement, the tribunal applied "the

laws of New York State . . . interpreted in accordance with the rules of the International Chamber

of Commerce (ICC)[.]"  Agreement at 4.

On February 19, 2014, the tribunal issued its Award.  *See* Petition Ex. B ("Award").  The

tribunal found that Tube City's June 2010 payment to Anza in the amount of $90,703.94 was an

overpayment on invoices that had already been paid by Tube City; accordingly, it ordered Anza

to pay Tube City that amount "forthwith upon notification of this award."  *Id.* at 22–23.  The

Award also ordered Anza to pay "[t]he costs of the arbitration fixed by the ICC Court in the sum

of $50,000.00," as well as Tube City's "reasonable legal and other costs in the sum of

$87,022.00."  *Id.*  In total, Tube City was awarded $227,725.94.  *Id.*

To date, Anza has not paid the Award.  Petition ¶ 27.  On March 14, 2014, Tube City

filed its petition to confirm the Award.  Dkt. 2.  That petition remains unopposed.

## II.      Discussion

The FAA provides a "streamlined" process for a party seeking a "judicial decree confirming an award, an order vacating it, or an order modifying or correcting it." *Hall St. Assocs. L.L.C. v. Mattell, Inc.*, 552 U.S. 576, 582 (2008).  "Normally, confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court, and the court must grant the award unless the award is vacated, modified, or corrected." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006).  But "[a]rbitration awards are not self-enforcing." *Hoeft v. MVL Grp., Inc.*, 343 F.3d 57, 63 (2d Cir. 2003), *overruled on other grounds by Hall St.*, 552 U.S. 576.  Rather, "they must be given force and effect by being converted to judicial orders by courts." *D.H. Blair*, 462 F.3d at 104.

### A.      Jurisdiction

Although the petition is unopposed, the Court must, at the outset, determine whether it has jurisdiction to confirm this Award.

To confirm an award under Section 9 of the FAA, the parties must have consented in advance to judicial confirmation.  *See* 9 U.S.C. § 9 (authorizing judicial confirmation "[i]f the parties in their agreement have agreed that a judgment of the court shall be entered upon the award"); *Idea Nuova, Inc. v. GM Licensing Grp., Inc.*, 617 F.3d 177, 180 (2d Cir. 2010) (Section 9 of the FAA "provides for judicial confirmation of arbitral awards *on consent of the parties*") (emphasis added); *Varley v. Tarrytown Associates, Inc.*, 477 F.2d 208, 210 (2d Cir. 1973) (the FAA "provides that confirmation of an arbitration award is appropriate only where the parties in their agreement have agreed that a judgment of the court shall be entered upon the award").  "By including a consent-to-confirmation requirement, Congress aimed 'to ensure that the parties have affirmatively agreed to the application of the federal substantive law contemplated by the [FAA]

to the interpretation of the arbitration agreement into which they have entered.'" *Phoenix Aktiengesellschaft v. Ecoplas, Inc.*, 391 F.3d 433, 436 (2d Cir. 2004) (quoting *I/S Stavborg v. Nat'l Metal Converters, Inc.*, 500 F.2d 424, 426 (2d Cir. 1974)).

Here, the parties did not, in their Agreement, expressly consent to the judicial confirmation of awards made in arbitration. Article 13 merely states that a dispute "shall be submitted to [the] International Chamber of Commerce in New York" and that the "award of arbitration shall be final and binding on both parties." Agreement at 4.

As the Second Circuit has noted, however, parties may communicate their consent to judicial confirmation of arbitral awards in ways other than an express contractual provision. For instance, in *Kallen v. District 1199, Nat'l Union of Hosp. and Health Care Employees*, 574 F.2d 723 (2d Cir. 1978), the Court held that Section 9's consent-to-confirmation requirement was satisfied by the parties' "full participation" in an arbitration process before the American Arbitration Association ("AAA") and by the contract's provision that the "award of an arbitrator hereunder shall be final, conclusive and binding." *Id.* at 724–26. Similarly, in *I/S Stavborg*, the Court held that Section 9's requirements were satisfied where the parties participated willfully and where the arbitration clause stated that the arbitrators' decisions "shall be final." 500 F.2d at 425–27.

More recently, in *Phoenix Aktiengesellschaft v. Ecoplas, Inc.*, then-Judge Sotomayor, writing for the Second Circuit, reaffirmed, in dicta, that *I/S Stavborg* and *Kallen* stand for the proposition that consent need not "be explicit in order to satisfy § 9." 391 F.3d at 436 n.2. The holding in *Phoenix* was that Section 207 of the FAA preempts Section 9's consent-to-confirmation requirement in international arbitration cases brought under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517,

T.I.A.S. No. 6997.  *See* 391 F.3d at 436.  Because Section 207, unlike Section 9, does not include

a consent requirement, the Court held that the parties' failure to provide such consent did not bar

judicial confirmation of their award.  However, as the Second Circuit noted, the district court had

"ruled for Phoenix on the alternative ground that even if § 9's consent requirement applied, the

arbitration clause satisfied the requirement."  *Id.* at 436 n.2.  Although the Court's preemption

holding obviated the need to reach this alternative ground, the Court noted that "the language

used in the Agreement, taken together with the parties' actions, provides some support for" that

alternate basis for confirmation.  *Id.*

Here, Article 13 of the parties' Agreement states that the "award of arbitration shall be

final and binding on both parties," Agreement at 4, and both sides participated fully in the

arbitration process.  This case is thus closely akin to *I/S Stavborg* and *Kallen*.  Moreover, the

arbitration took place in New York and applied New York law.  As the Second Circuit noted in

*I/S Stavborg*, a purpose of Section 9's consent-to-confirmation requirement is "to ensure that the

parties have affirmatively agreed to the application of the federal substantive law contemplated

by the [FAA]," 500 F.2d at 426; the fact that this Agreement was entered into between two

American companies who are engaged in quintessentially interstate (and transnational)

commerce, means that the parties could have anticipated that an award might be enforced in

federal court.  *See Hall St.*, 552 U.S. at 582 ("[I]n cases falling within a court's jurisdiction, the

[FAA] makes contracts to arbitrate 'valid, irrevocable, and enforceable,' so long as their subject

involves 'commerce.'") (citing FAA § 2).

This case *is*, however, distinct from *I/S Stavborg* and *Kallen* in one important respect.

Those two cases concerned disputes arising under federal law—specifically, labor law and

maritime law—while this is a contract case arising under New York state law.  As then-Judge

Sotomayor noted in *Phoenix*, the holdings in *I/S Stavborg* and *Kallen* "might, but do not

necessarily, apply to a contract case." 391 F.3d at 436 n.2. This case, however, could properly

have been brought before, or removed to, this Court pursuant to diversity jurisdiction.[2] Because

Section 9 provides for the confirmation of arbitration awards in cases within this Court's

jurisdiction, and because the contract at issue involved commerce, the parties reasonably could

have anticipated that the prevailing party in their arbitration would seek to enforce the arbitral

award in federal court. *Accord Kallen*, 574 F.2d at 726 ("In such circumstances, the [defendant]

can hardly avow that an award will be 'final, conclusive and binding' upon it without implicitly

agreeing that federal court intervention may be sought to compel compliance."). Permitting

Tube City to enforce its award in this Court would not be unfair to Anza.

The Court therefore applies the rule—established in *I/S Stavborg* and *Kallen*—that the

consent requirement of Section 9 may be shown by a combination of: (1) the participation of the

parties in the arbitration; and (2) language in the Agreement that any arbitration award is to be

"final and binding." *See also Idea Nuova*, 617 F.3d at 180 (indicating, in dicta, that if an

agreement makes arbitration "final or binding," it may be judicially confirmed under Section 9)[3];

---

[2] Tube City is an LLC with one member, Tube City IMS Corporation, which is a citizen of Delaware and Pennsylvania. Petition ¶¶ 1–3. Anza is an LLC with one member, Joseph Anza, who is a citizen of Connecticut. *Id.* ¶¶ 4–6. Because there is complete diversity between the parties, and because the amount in controversy exceeds $75,000, there is diversity jurisdiction under 28 U.S.C. § 1332(a)(2). Moreover, the Court has personal jurisdiction over the defendant, because Anza's principal place of business is in Manhattan, New York. *Id.* ¶ 4. And because the arbitration Award was issued in this District, this Court is the proper venue for the Award's judicial confirmation. *See* 9 U.S.C. § 9 ("If no court is specified in the agreement of the parties, then [an] application [for confirmation] may be made to the United States court in and for the district within which such award was made.").

[3] *Idea Nuova* holds that a contract stating that arbitration is to be conducted pursuant to AAA rules is sufficient to establish consent. 617 F.3d at 181. The basis of that holding is that AAA Rule 48(c) states that "[p]arties to an arbitration under these rules shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court

*Truong v. New York Hotel & Motel Trades Council, AFL-CIO*, No. 07 Civ. 11383 (RJH), 2009

WL 798937, at *2 (S.D.N.Y. Mar. 26, 2009) ("Plaintiff and defendant agreed that the decision of

the arbitrator would be 'final and binding,' and both parties participated fully in the arbitration

process. Consequently, there was at least an implicit agreement to the confirmation of the

arbitrator's decision by a court.").

Because both sides agreed that the decision of the arbitrator would be final and binding,

and because both sides participated fully in this arbitration, the Court concludes that the parties

consented to the judicial confirmation of their Award under Section 9. Accordingly, the Court

has jurisdiction to confirm the Award.

### B.      The Merits

Under Section 9 of the FAA, review of an arbitral award by a district court "is 'severely

limited' so as not unduly to frustrate the goals of arbitration—namely to settle disputes

efficiently and avoid long and expensive litigation."[4]  *Salzman v. KCD Fin., Inc.*, No. 11 Civ.

5865 (DLC), 2011 WL 6778499, at *2 (S.D.N.Y. Dec. 21, 2011) (quoting *Willemijn*

*Houdstermaatschappij, BV v. Standards Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997)); *see*

*also NYKcool A.B. v. Pac. Fruit Inc.*, No. 10 Civ. 3867 (LAK) (AJP), 2010 WL 4812975, at *5

(S.D.N.Y. Nov. 24, 2010) ("To ensure that the twin goals of arbitration, namely, settling disputes

---

having jurisdiction thereof." *Id.* The arbitration at issue in this case, however, was conducted under the rules of the International Chamber of Commerce ("ICC"), not the AAA's rules. Agreement at 4. The ICC Rules lack a comparable consent-to-confirmation provision.

[4] In *Cnty. of Nassau v. Chase*, 402 F. App'x 540 (2d Cir. 2010), the Second Circuit reversed the district court's confirmation of an arbitration award under FAA § 9, instead confirming the award under N.Y. C.P.L.R. § 7510, where the contract specified that any appeal of an award was to be governed exclusively by New York state law. The Agreement here states that New York state law governs the contract itself, but it does not state that New York law governs the appeal of arbitration awards, let alone that it does so exclusively. Accordingly, the Court has, as requested by Tube City, considered whether to confirm this Award pursuant to FAA § 9.

efficiently and avoiding long and expensive litigation are met, arbitration awards are subject to very limited review."). Indeed, judicial confirmation is ordinarily "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *D.H. Blair*, 462 F.3d at 110.

Here, the Court has reviewed, in detail, the parties' Agreement, including the arbitration clause, and the Award. On that record, and based on the very limited review that is appropriate on a petition to confirm an arbitral award, the Court concludes that there is no basis to vacate or modify. Accordingly, the Court confirms the Award, and enters judgment in the amount of $227,725.94 to be paid to Tube City.

The Clerk of Court is directed to terminate all pending motions and to close this case.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: June 11, 2014
New York, New York

8