UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In the Matter of the Arbitration
Between

TUBE CITY IMS, LLC

                  Petitioner,

    -against-

ANZA CAPITAL PARTNERS LLC,

                Respondent.

Case No. 14-cv-1783 (PAE)


**MEMORANDUM OF LAW IN SUPPORT OF
PETITIONER TUBE CITY IMS, LLC'S MOTION FOR A TURNOVER ORDER
AGAINST RECIPIENTS OF FRAUDULENT TRANSFERS JOSEPH V. ANZA,
ALEXANDRA ANZA, OMNI STEEL SUPPLY LLC, AND JVA PARTNERS LTD**


Justin M. Sher
Justin J. Gunnell
SHER TREMONTE LLP
80 Broad Street, Suite 1301
New York, New York 10004
Tel:  212.202.2600
Fax:  212.202.4156
E-mail:  jsher@shertremonte.com

*Attorneys for Petitioner Tube City IMS, LLC*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................... 1

FACTUAL BACKGROUND ............................................................................... 2

I.      Procedural History ............................................................................... 2

II.     Fraudulent Transfers from Anza Capital .............................................. 4

        A.      Fraudulent Transfers to Joseph V. Anza ........................... 4

        B.      Fraudulent Transfers to Alexandra Anza ........................... 6

        C.      Fraudulent Transfers to JVA Partners Ltd. ....................... 7

        D.      Fraudulent Transfers to Omni Steel Supply LLC ............ 9

ARGUMENT ..................................................................................................... 10

I.      PETITIONERS CAN PROCEED BY MOTION IN THIS ACTION RATHER
        THAN FILE A PLENARY ACTION .................................................. 10

II.     THE COURT HAS PERSONAL JURSIDICTION OVER THE TRANSFEREES ..... 12

        A.      The Court has Personal Jurisdiction over Joseph V. and Alexandra
                Anza ......................................................................... 13

        B.      The Court has Personal Jurisdiction over Omni Steel Supply LLC ......... 14

        C.      The Court has Personal Jurisdiction over JVA Partners Ltd. ................... 15

III.    THE TRANFEREES ARE RECIPIENTS OF FRAUDULENT FUNDS AND
        THUS   A TURNOVER ORDER IS APPROPRIATE .................................. 17

        A.      Anza LLC was a Defendant in an Action for Money Damages and
                has failed to satisfy the Judgment ............................................. 19

        B.      The Conveyances at Issue were made without Fair Consideration .......... 20

                1.      The conveyance made by Anza LLC directly to or for the
                benefit of Joseph V. Anza and Alexandra Anza were made without
                fair consideration ............................................................. 21

                2.      The conveyance made by Anza LLC to JVA Partners directly
                and indirectly through the Anza Cyprus Entities were made without
                fair consideration ............................................................. 23

                        a.      JVA Partners Ltd. is the Alter Ego of Anza..................... 25

                        b.      The Court Should Permit Petitioner to Recover Additional
                                Monies from JVA Partners through Reverse
                                Veil-Piercing ........................................................... 28

                3.      The conveyances made by Anza LLC to Omni Steel Supply
                LLC were fraudulent............................................................. 28

CONCLUSION.................................................................................................. 29

# TABLE OF AUTHORITIES

## CASES

*112 W. 34th St. Co. v. Shamah*,
 45 Misc. 3d 1213(A) (N.Y. Sup. Ct. 2014)....................................................... 20

*Aaron v. Mattikow*,
 225 F.R.D. 407 (E.D.N.Y. 2004) .................................................................... 10

*Am. Federated Title Corp. v. GFI Mgmt. Servs., Inc.*,
 No. 13-CV-6437 KMW, 2015 WL 5091113 (S.D.N.Y. Aug. 28, 2015)......................... 28

*Amusement Indus., Inc. v. Midland Ave. Associates, LLC*,
 820 F. Supp. 2d 510 (S.D.N.Y. 2011)............................................................... 18

*Baby Phat Holding Co., LLC v. Kellwood Co.*,
 123 A.D.3d 405 (1st Dep't 2014)....................................................................... 26

*Bernasconi v. Aeon, LLC*,
 105 A.D.3d 1167 (3d Dep't 2013) .................................................................... 20

*Berner Trucking, Inc. v. Brown*,
 281 A.D.2d 924 (4th Dep't 2001)....................................................................... 20

*Catauro v. Goldome Bank for Sav.*,
 592 N.Y.S.2d 422 (2nd Dep't 1993).................................................................. 17

*Chen v. New Trend Apparel, Inc.*,
 8 F. Supp. 3d 406, 447 (S.D.N.Y. 2014) ......................................................... 20

*Chong v. Healthtronics, Inc.*,
 No. CV-06-1287 SJF MLO, 2007 WL 1836831 (E.D.N.Y. June 20, 2007) .................. 14

*Chrysler Capital Corp. v. Century Power Corp.*,
 778 F. Supp. 1260 (S.D.N.Y. 1991)................................................................. 17

*D.H. Blair & Co. v. Gottdiener*,
 462 F.3d 95 (2d Cir. 2006)............................................................................ 12

*Dixie Yarns, Inc. v. Forman*,
 906 F. Supp. 929 (S.D.N.Y. 1995) ....................................................... 18, 20, 29

*Eckhaus v. Blauner*,
 No. 94 CIV. 5635 (CSH), 1997 WL 362166 (S.D.N.Y. June 26, 1997) ...................... 29

*Ed Moore Adver. Agency, Inc. v. I.H.R., Inc.*,
 494 N.Y.S.2d 400 (2d Dep't 1985) ................................................................. 16


*Fed. Nat. Mortgage Ass'n v. Olympia Mortgage Corp.*,
 No. 04 CV 4971 NG MDG, 2006 WL 2802092 (E.D.N.Y. Sept. 28, 2006) ........ 18, 23, 29

*First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc.*,
 871 F. Supp. 2d 103 (E.D.N.Y. 2012) ............................................................ 20

*Gelbard v. Esses*,
 96 A.D.2d 573, 576 (1983) ............................................................................ 17

*Hyland Meat Co. v. Tsagarakis*,
 202 A.D.2d 552, 609 N.Y.S.2d 625 (2d Dep't 1994)....................................... 27

*Jonas v. Estate of Leven*,
 No. 14-CV-3369 SHS, 2015 WL 4522763 (S.D.N.Y. July 27, 2015)...................... 12, 13

*Kavanagh v. Rubin*,
 230 A.D.2d 892, 893 (2d Dep't 1996).............................................................. 18

*Klein v. Tabatchnick*,
 No. 74 CIV. 751 (HRT), 1974 WL 433 (S.D.N.Y. July 19, 1974).................................. 16

*LaBarbera v. Audax Const. Corp.*,
 971 F. Supp. 2d 273 (E.D.N.Y. 2013) ............................................................ 11

*Laufer v. Ostrow*,
 55 N.Y.2d 305 (1982) ..................................................................................... 12

*Lyman Commerce Solutions, Inc. v. Lung*,
 No. 12 CIV. 4398 TPG, 2015 WL 1808693 (S.D.N.Y. Apr. 20, 2015) .................... 19, 29

*Matter of Gonzalez v. City of New York*,
 127 A.D.3d 632 (1st Dep't 2015) .................................................................. 19

*Matter of Mega Personal Lines, Inc. v Halton*,
 9 A.D.3d 553 (3d Dep't 2004) ...................................................................... 21

*Matter of Mogil v. Bldg. Essentials, Inc.*,
 129 A.D.3d 1378 (3rd Dep't 2015)................................................................. 20

*Matter of WBP Central Assocs., LLC v. DeCola*,
 50 AD3d 693 (2d Dep't 2008)....................................................................... 25

*Mitchell v. Lyons Prof'l Servs., Inc.*,
    727 F. Supp. 2d 120 (E.D.N.Y. 2010) ................................................................... 10, 25

*Morgenthau v. A.J. Travis Ltd.*,
    184 Misc. 2d 835 (Sup. Ct. 2000) .................................................................................... 16

*Morris v. New York State Dep't of Taxation & Fin.*,
    82 N.Y.2d 135 (1993) ....................................................................................................... 27

*Motorola Credit Corp. v. Uzan*,
    739 F. Supp. 2d 636 (S.D.N.Y. 2010) ............................................................................ 26

*Murin v. Estate of Schwalen*,
    31 A.D.3d 1031 (3d Dep't 2006) ......................................................................... 22, 25, 28

*N. Mariana Islands v. Millard*,
    845 F. Supp. 2d 579 (S.D.N.Y. 2012) ...................................................................... 10, 11

*Neilson v. Sal Martorano. Inc.*,
    319 N.Y.S.2d 480 (2d Dep't 1971) ................................................................................. 16

*Neshewat v. Salem*,
    365 F. Supp. 2d 508 (S.D.N.Y. 2005) *aff'd,* 194 F. App'x 24 (2d Cir. 2006) ........... 19, 21

*One Hundred Pearl Ltd. v. Vantage Sec., Inc.*,
    887 F. Supp. 636 (S.D.N.Y. 1995) ................................................................................. 20

*Optimum Worldwide Ltd. v. Klebener*,
    No. 95 CIV. 1359 (HB), 1996 WL 71500 (S.D.N.Y. Feb. 16, 1996) ............................. 12

*Rampello v. Cioffi*,
    282 A.D.2d 442 (2nd Dep't 2001) ....................................................................... 22, 25, 28

*Ross Univ. Sch. Of Med., Ltd. v. Brooklyn-Queens Health Care, Inc.*,
    No. 09-CV-1410 KAM, 2012 WL 6091570 (E.D.N.Y. Dec. 7, 2012), *report and*
    *recommendation adopted in part*, No. 09-CV-1410 KAM RLM, 2013 WL 1334271
    (E.D.N.Y Mar. 28, 2013) ................................................................................................. 27

*RTC Mortgage Trust 1995-S/N1 v. Sopher*,
    171 F. Supp. 2d 192 (S.D.N.Y. 2001) ............................................................................ 18

*S.E.C. v. Colonial Inv. Mgmt. LLC*,
    No. 07 CIV 8849 PKC, 2010 WL 4159276 (S.D.N.Y. Oct. 6, 2010) ............................. 10

*Sardis v. Frankel*,
    113 A.D.3d 135 (1st Dep't 2014) ................................................................ 20, 21

*Speed v. Pelican Resort N.V.*,
    No. 91 CIV. 7686 (SWK), 1992 WL 147646 (S.D.N.Y. June 16, 1992) ........................ 15

*State Farm Mut. Auto. Ins. Co. v. Grafman*,
    No. 04-CV-2609 NG SMG, 2015 WL 269529 (E.D.N.Y. Jan. 21, 2015) ...................... 10

*Trust v. Kummerfeld*,
    153 F. App'x 761 (2d Cir. 2005) ................................................................ 25

*UBS Sec. LLC v. Highland Capital Mgmt., L.P.*,
    93 A.D.3d 489 (1st Dep't 2012) ................................................................ 27

*Universitas Educ., LLC v. Nova Grp., Inc.*,
    No. 11CV1590-LTS-HBP, 2014 WL 3883371 (S.D.N.Y. Aug. 7, 2014) ...................... 10

*Vaden v. Discover Bank*,
    556 U.S. 49 (2009) ................................................................................ 12

*Weisman Celler Spett & Modlin, P.C. v. Trans-Lux Corp.*,
    No. 12 CIV 5141 JMF, 2012 WL 5512164 (S.D.N.Y. Nov. 14, 2012) ........................ 15

*Zohlman v. Zoldan*,
    No. 0603619/2007, 2008 WL 4000104 (2008) (Sup. Ct. 2010) .............................. 25

## STATUES AND REGULATIONS

DCL § 273-a ................................................................. 17, 18, 19, 20, 21, 29

DCL § 274 ................................................................................ 18

DCL § 276 ................................................................................ 18

CPLR § 301 ................................................................... 12, 14, 15

CPLR § 302 ............................................................. 13, 14, 15, 16, 17

CPLR § 5225 ............................................. 1, 10, 11, 17, 19, 25, 26

Fed. R. Civ. P. Rule 4(e) ...................................................... 11

Fed. R. Civ. P. Rule 69(a) ............................................. 1, 10, 11

## OTHER AUTHORITIES

6 Weinstein-Korn-Miller, NY Civ. Prac., par. 5225.17 .................................. 17

Matthew D. Caudill, *Piercing the Corporate Veil of A New York Not-for-Profit Corporation*,
    8 Fordham J. Corp. & Fin. L. 449 (2003) ...................................................................... 27

Siegel, N.Y. Prac. § 81 (5th ed.) ..................................................................................... 13

Petitioner, Tube City IMS, LLC ("Tube City") respectfully submits this Memorandum of Law in support of its Motion for a Turnover Order against Recipients of Fraudulent Transfers, Joseph V. Anza, Alexandra Anza, Omni Steel Supply LLC, and JVA Partners Ltd.

## PRELIMINARY STATEMENT

On October 5, 2012, Petitioner initiated an arbitration against Respondent Anza Capital Partners LLC ("Anza LLC" or "Respondent") seeking money damages for Respondent's conversion of an overpayment for scrap metal (the "Arbitration").  After both sides had an opportunity to be heard, the arbitration panel found in Petitioner's favor and, on February 29, 2014, entered an award in the amount of $227,725.94 against the Respondent.  This Court confirmed the arbitration award and issued a judgment on June 11, 2014 (the "Judgment").

To date, Respondent has not paid any amount toward the Judgment, and the full Judgment remains outstanding.  Since being named a defendant in the Arbitration, Respondent, its principal Joseph V. Anza ("Anza"), Anza's wife, Alexandra Anza, and other entities controlled by Anza, or his family members, received conveyances of significant sums traceable to Anza Capital in bad faith and without fair consideration.  The illegal conveyances have had the effect of removing Respondent's assets from the reach of legitimate creditors like Petitioner.

Petitioner brings this post-judgment enforcement motion pursuant to Federal Rule of Civil Procedure 69 and New York Civil Practice Law and Rules ("CPLR") § 5225 requesting that the Court enter judgment against the transferees in the amounts of the fraudulent transfers each respectively received and order the recipients of the fraudulent transfers to turn over the fraudulently conveyed funds to Petitioner.

## FACTUAL BACKGROUND

**Procedural History**

The Arbitration was filed on October 5, 2012 and arose from a written agreement between the Petitioner and Respondent, Anza Capital Partners LLC, for the purchase of certain scrap metal goods. *See* Docket Entry No. 2, Exhibit B. Petitioner inadvertently paid Respondent's invoice *twice*. *See id.* at 1, 13, 22-23. Despite Petitioner's repeated attempts to recover this overpayment, Respondent refused, without any justification, to return Petitioner's funds. *See id.* at 16, 22-23.

On March 14, 2014 Petitioner, Tube City, brought this action to confirm the arbitration award of $227,725.94. *See* Docket Entry No. 2. On June 11, 2014 this Court issued an Opinion and Order concluding that there was no basis to vacate or modify the Arbitration Award, confirmed the award in its entirety, and entered judgment in the amount of $227,725.94 (the "Judgment").[1] *See* Docket Entry No. 6.

Between July and September 2014 Petitioner engaged in extensive efforts to locate and serve Anza, Anza LLC's sole principal, with discovery subpoenas in an effort to collect the Judgment. *See* Docket Entry No. 10, November 6, 2014 Declaration of Justin J. Gunnell in Support of Motion for Substitute Service. During this time, Anza was successful at evading Petitioner. *See id.* For instance, from mid-August to mid-September 2014 a process server made six attempts to serve Anza at his Connecticut residence. *See id.* ¶ 15. On one occasion, the process server spoke with Anza's wife, Alexandra Anza, who did not deny that Anza resided at

---

[1]    Including the Court's award of costs in the amount of $11,223.90 on February 18, 2015, the outstanding judgment is now $238,949.84 plus judicial interest calculated from the date of the Judgment.

the address and accepted a delivery slip.  *See id.* ¶ 16.  During another attempt, the process server observed an adult peer through the window, but no one answered the door.  *See id.* ¶ 17.

On November 6, 2014 Petitioners filed a motion for leave to serve discovery subpoenas on Joseph Anza by alternative means and for an order compelling Anza Capital to respond to Petitioner's discovery requests.  *See* Docket Entry No. 8.  On November 14, 2014 the Court entered an Opinion and Order authorizing Petitioners to serve the discovery subpoenas by alternative means and compelling Anza Capital to respond to Tube City's document requests and appear for a deposition.  *See* Docket Entry No. 13.  On February 18, 2015 the Court awarded Petitioner's reasonable costs in bringing the motion for leave to serve discovery subpoenas on Anza by alternative means and noted that "Anza Capital wrongfully, and audaciously, retained an inadvertent duplicate payment, refused to pay an arbitral award and then judgment, and has persistently tried to hide from this lawsuit."  *See* Docket Entry No. 15 at 3.

On November 21, 2014 Petitioner deposed Michael Levine, the attorney that represented Anza Capital in the underlying arbitration.  *See* declaration of Justin J. Gunnell in support of the within motion dated June 13, 2016 (herein, "Gunnell Decl.") ¶ 27.   On January 22, 2015 Petitioner deposed Anza who was represented at his deposition by Levine.  *See id.* ¶ 28.  Petitioner also issued multiple subpoenas to Chase Bank for records concerning Anza LLC, Anza and certain entities affiliated with Anza or his family (the "Chase Records").  *See id.* ¶ 29.  To date, Respondent still has not paid any portion of the Arbitration Award or Judgment.  *See* Gunnell Decl. ¶ 31.

**Fraudulent Transfers from Anza Capital**

*Fraudulent Transfers to Joseph V. Anza*

      The Chase Records indicate that Anza LLC made substantial payments for the benefit of Anza, individually, after the Arbitration was filed, including $14,669.90 in mortgage payments for a residential apartment owned personally by Anza, *see* **Chart 1** below, as well as $3,770.06 in homeowner association and maintenance fees related to the condominium.[2]

| Chart 1: Payments to Chase Home Finance from Anza LLC[3] | |
|---|---|
| *Date of Transfer* | *Amount of Transfer* |
| 10/25/2012 | $ 2,095.70 |
| 11/26/2012 | $ 2,095.70 |
| 12/26/2012 | $ 2,095.70 |
| 1/24/2013 | $ 2,095.70 |
| 2/26/2013 | $ 2,095.70 |
| 3/26/2013 | $ 2,095.70 |
| 4/25/2013 | $ 2,095.70 |
| **TOTAL:** | **$ 14,669.90** |

      The Chase Records also reflect that $8,116.48 was paid by Anza LLC, after the Arbitration was filed, toward the lease of Anza's personal motor vehicle, an Audi. *See* **Chart 2** below.

| Chart 2: Payments to Volkswagen Credit from Anza LLC[4] | |
|---|---|
| *Date of Transfer* | *Amount of Transfer* |
| 11/30/2012 | $ 1,254.25 |
| 12/17/2012 | $ 611.83 |
| 1/15/2013 | $ 611.83 |
| 2/14/2013 | $ 611.83 |

---

[2]    The evidence reflects that Anza LLC made $3,770.06 in payments between October 30, 2012 and April 29, 2013 (the month the condo was ultimately sold) to Caran Properties. *See* Gunnell Decl. **Exhibit 1**. Caran Properties is the manager of the building in which the apartment is in. *See* Gunnell Decl. **Exhibit 2**. A sales listing for the property showing estimated common fees in the approximate amounts of the monthly payments. *See id*.

[3]    *See* Gunnell Decl. **Exhibit 3**.

[4]    *See* Gunnell Decl. **Exhibit 4**.

4

| | | |
|---|---|---|
| 4/9/2013 | $ | 673.01 |
| 4/22/2013 | $ | 611.83 |
| 5/16/2013 | $ | 611.83 |
| 7/11/2013 | $ | 1,254.25 |
| 8/2/2013 | $ | 642.42 |
| 9/6/2013 | $ | 611.83 |
| 9/7/2013[5] | $ | 621.57 |
| **TOTAL:** | **$** | **8,116.48** |

At his deposition, Anza confirmed that he was the only person with access to Anza LLC's bank accounts.  *See* Gunnell Decl. **Exhibit 5**, Deposition of Joseph V. Anza, dated January 22, 2015 (herein, "Anza Dep.") at 79.

The Chase Records also show that Anza received $2,000 from Anza LLC directly into his own personal Chase bank account on October 25, 2012.  *See* Gunnell Decl. **Exhibit 6**.  When asked at his deposition about this transfer, Anza was unable to explain what this transfer was for. *See id.* at 113-114.  Deposit slips signed by Anza also show cash withdrawals in the amount of $3,000 after the Arbitration was filed by Anza.  *See* Gunnell Decl. **Exhibit 7**.

Further, the Chase Records reflect that $96,798.42 was paid by Anza LLC to Anza's personal American Express credit card.[6]  *See* **Chart 3** below.

| Chart 3: Payments to American Express from Anza LLC[7] | | |
|---|---|---|
| *Date of Transfer* | | *Amount of Transfer* |
| 10/9/2012 | $ | 5,450.36 |
| 11/7/2012 | $ | 3,744.43 |
| 12/7/2012 | $ | 6,598.08 |
| 1/7/2013 | $ | 6,266.79 |
| 2/7/2013 | $ | 4,604.10 |
| 2/13/2013 | $ | 4,604.10 |

---

[5]      Payment was charged by Anza to Anza LLC's Chase credit card.

[6]      At his deposition, Anza testified that he personally had an American Express card and that Anza LLC did not have an American Express account and only maintained a Chase credit card.  *See* Anza Dep. at 66-67, 82-83.

[7]      *See* Gunnell Decl. **Exhibit 8**.

| 3/7/2013 | $ | 9,001.81 |
|---|---|---|
| 3/7/2013 | $ | 8,202.80 |
| 4/8/2013 | $ | 5,976.06 |
| 5/7/2013 | $ | 9,570.04 |
| 6/7/2013 | $ | 11,503.01 |
| 7/8/2013 | $ | 8,444.67 |
| 8/7/2013 | $ | 6,638.56 |
| 9/9/2013 | $ | 4,972.96 |
| 10/7/2013 | $ | 786.10 |
| 11/7/2013 | $ | 434.55 |
| **TOTAL:** | **$** | **96,798.42** |

Anza also testified that he took a trip to Europe with his wife beginning in June of 2013 to visit his father in Italy.  Anza Dep. at 132-133.  The Anza LLC Chase credit card statements, which were paid by Anza LLC, show extensive payments towards Anza's European vacation, including over $9,000 paid to "Santinovo Poggibonsi" a luxury bed and breakfast style resort located in Tuscany, over $3,000 for car rentals to Avis Rome and hundreds of dollars on airfare, taxis and hotels in Budapest during the summer of 2013.   The total paid by Anza LLC for these expenses amount to $15,860.36.  *See* Gunnell Decl. **Exhibit 9**.

Thus, through payments toward Anza's mortgage and condominium association fees, his Audi, his American Express credit card, European vacation, transfers to him and cash withdrawals by him, Anza has received the benefit of fraudulent conveyances totaling at least $144,215.22 from Anza LLC after Anza LLC was named a defendant in the Arbitration.

*Fraudulent Transfers to Alexandra Anza*

In late October 2012, a transfer in the amount of $2,000 was made from Anza LLC to Anza's wife, Alexandra Anza.  *See* Gunnell Decl. **Exhibit 10**.  Anza testified at his deposition that these payments were made to his wife for "receiving invitations for [ ] parties and replying [to the invitations] for us to be there."  *See* Anza Dep. at 110.  Thus, Anza LLC purportedly paid

6

Alexandra Anza $2,000 to respond "yes" to party invitations after being named a defendant in the Arbitration.

*Fraudulent Transfers to JVA Partners Ltd.*

After the arbitration was filed against Anza LLC, Anza LLC made payments totaling $16,847.50 to an entity called JVA Partners Ltd. ("JVA Partners").  *See* **Chart 4** below.

| Chart 4: Payments to JVA Partners from Anza LLC[8] | |
|---|---|
| *Date of Transfer* | *Amount of Transfer* |
| 7/29/2013 | $         5,847.50 |
| 8/16/2013 | $         5,000.00 |
| 9/24/2013 | $         6,000.00 |
| **TOTAL:** | **$       16,847.50** |

JVA Partners is a holding company owned by a trust, the "JVA Trust," which was set up for the benefit of Anza.  *See* Anza Dep. at 53-54.  The "JVA" in the names of both entities stands for "Joseph V. Anza."  *See id.*  At his deposition Anza, was unable to explain the transfers from Anza LLC to JVA Partners, admitted that Anza LLC did not receive any goods in exchange for these payments and could not identify any goods or services received from JVA Partners in exchange for the payments.  *See id.* at 98-102.

The Chase Records indicate that after the Arbitration was filed, Anza LLC made three payments to certain Cyprus-based entities that are also apparent Anza LLC affiliates totaling $265,000 – including a transfer in the amount of $100,000 *just three weeks* after the Arbitration was filed.  *See* **Chart 5** below.  These affiliates are named "Anza Capital Partners (Cyprus) Limited" ("Anza Cyprus I") and "Anza Capital Partners (Cyprus) II Limited" ("Anza Cyprus II", together the "Anza Cyprus Entities").  When questioned about these transfers at his deposition Anza said that he did not know what they were for or why Anza LLC was sending hundreds of

---

[8]      *See* Gunnell Decl. **Exhibit 11**.

thousands of dollars to Cyprus.  *See* Anza Dep. at 103-105.  Although Anza claimed to have no

knowledge of, or ownership interest in, the Anza Cyprus Entities, a PowerPoint presentation

Anza admitted he prepared indicates that Anza Cyprus I is owned by Anza along with two other

individuals.  *See* Gunnell Decl. **Exhibit 12** at 17; Anza Dep. at 42-43.

| Chart 5: Payments to the Anza Cyprus Entities from Anza LLC[9] | | |
|---|---|---|
| *Date of Transfer* | *Amount of Transfer* | |
| 10/25/2012 | $ | 100,000.00 |
| 8/16/2013 | $ | 80,000.00 |
| 9/24/2013 | $ | 85,000.00 |
| **TOTAL:** | **$** | **265,000.00** |

Further, the Chase Records establish that the Anza Cyprus Entities have begun to transfer

some of the fraudulently conveyed funds back to Anza, for his use and benefit, through the JVA

Partners bank account.[10]  *See* **Figure 1** and **Chart 6** below.

**Figure 1: Transfers from Anza LLC to JVA Partners through the Anza Cyprus Entities**



---

9        *See* Gunnell Decl. **Exhibit 13**.

10       It is clear that Anza uses JVA Partners for non-business related expenses, for instance,
the witness fee that was issued to Anza for his deposition testimony in this action was deposited
into a bank account owned by JVA Partners.  *See* Anza Dep. at 70-72, **Exhibit 23**.  Also the
Chase Records show JVA Partners made substantial payments towards Anza's personal
expenses.  *See* Section III(B)(2), *infra*.

| Chart 6: Payments to JVA Partners from the Anza Cyprus Entities[11] | |
|---|---|
| *Date of Transfer* | *Amount of Transfer* |
| 11/7/2014 | $        10,000.00 |
| 1/22/2015 | $        25,000.00 |
| 3/6/2015 | $        15,000.00 |
| **TOTAL:** | **$        50,000.00** |

Thus, JVA Partners has received fraudulent conveyances directly from Anza LLC totaling $16,847.50 and indirectly from Anza LLC through funds routed through the Anza Cyprus Entities in the amount of $50,000 totaling $66,847.50.  *See* **Figure 1***, supra.*

*Fraudulent Transfers to Omni Steel Supply LLC*

Omni Steel Supply LLC ("Omni Steel"), is an entity owned by Anza and his brother, Vincent J. Anza.  *See* Anza Dep. at 16.  This entity appears to have been formed in April 2011 shortly before the Arbitration was filed by Tube City against Anza LLC and is involved in the steel business, just as Anza LLC was.  *See id.* at 15, **Exhibit 19**.

The Chase Records indicate that after the Arbitration was filed against Anza LLC, Anza LLC made three payments to Omni Steel totaling $65,000.  *See* **Chart 7** below.  At his deposition, Anza was unable to recall these transactions or explain them in any detail.  *See* Anza Dep. at 90-93.  Anza also admitted that Anza LLC and Omni Steel did not do business together. *See id.* at 90.

| Chart 7: Payments to **Omni Steel** from Anza LLC[12] | |
|---|---|
| *Date of Transfer* | *Amount of Transfer* |
| 12/17/2012 | $        15,500.00 |
| 6/21/2013 | $        20,000.00 |
| 6/26/2013 | $        20,000.00 |
| 7/26/2013 | $        10,000.00 |
| **TOTAL:** | **$        65,000.00** |

---

[11]     *See* Gunnell Decl. **Exhibit 14**.

[12]     *See* Gunnell Decl. **Exhibit 15**.

Thus, Omni Steel has received fraudulent conveyances totaling $65,000.

**ARGUMENT**

**I.     PETITIONERS CAN PROCEED BY MOTION IN THIS ACTION RATHER
THAN FILE A PLENARY ACTION**

Courts have routinely held that Rule 69(a) authorizes a judgment creditor to bring a

special proceeding pursuant to CPLR § 5225(b) (a "turnover proceeding") against a third-party

garnishee or transferee by motion in a pending action rather and is not required to bring a plenary

action.  *See Aaron v. Mattikow,* 225 F.R.D. 407, 412 (E.D.N.Y. 2004) (holding Plaintiff not

required to file plenary action and that "based on the mandate of Rule 69(a) and the practice of

New York outlined in C.P.L.R. § 5225(b), [Plaintiff] has properly commenced this post-

judgment special proceeding" within the context of existing action); *Universitas Educ., LLC v.

Nova Grp., Inc.,* No. 11CV1590-LTS-HBP, 2014 WL 3883371, at *8 (S.D.N.Y. Aug. 7, 2014)

("because there is no provision for a 'special proceeding' under the Federal Rules of Civil

Procedure, it is appropriate to seek a turnover order against a third-party through motion

practice."); *S.E.C. v. Colonial Inv. Mgmt. LLC,* No. 07 CIV. 8849 PKC, 2010 WL 4159276, at *2

(S.D.N.Y. Oct. 6, 2010) (citing *Mitchell v. Lyons Prof'l Servs., Inc.,* 727 F. Supp. 2d 120, 125

(E.D.N.Y. 2010)) ("judgment creditor proceeding under N.Y. CPLR section 5225(b) may

proceed by motion, and need not institute a separate action"); *N. Mariana Islands v. Millard*, 845

F. Supp. 2d 579, 581-82 (S.D.N.Y. 2012) (concluding turnover application was properly brought

as a motion and stating "[n]early every court in this Circuit to consider the issue has held that

parties can bring a motion under FRCP 69(a), rather than instituting a special proceeding under

the New York state law. . . . '[A] special proceeding' is a creature of New York practice that

although brought as a distinct legal action, has more in common with motion practice than it

does with a plenary action.'"); *State Farm Mut. Auto. Ins. Co. v. Grafman,* No. 04-CV-2609 NG

10

SMG, 2015 WL 269529, at *1-2 (E.D.N.Y. Jan. 21, 2015) (granting plaintiff's motions seeking to recover fraudulently transferred property filed pursuant to Rule 69(a)(1) and CPLR Section 5225(b)).

However, in order to seek Section 5225(b) relief by motion, courts have held that such motion must be served on the garnishee or a transferee "in accordance with either the federal service requirements under Rule 4(e)(1) . . .or . . . Rule 4(e)(2)," and the Court must have personal jurisdiction over the putative garnishee(s) or transferee(s). *LaBarbera v. Audax Const. Corp.,* 971 F. Supp. 2d 273, 282 (E.D.N.Y. 2013). *See, e.g., id.* at 281 ("court's inquiry as to whether it may deem Plaintiffs' motion as a special proceeding is . . . confined to whether the court has personal jurisdiction over the [alleged transferees]"); *N. Mariana Islands v. Millard,* 845 F. Supp. 2d 579, 583 (S.D.N.Y. 2012) (internal citations omitted) (emphasis in original) ("court need only have *in personam* jurisdiction over the *garnishee;* it does not need to have personal jurisdiction over the *judgment debtor* or *in rem* jurisdiction over the property in question").

Here, Plaintiffs will serve the transferees pursuant to the Court's directive, and as explained below, the Court has personal jurisdiction over the transferees.[13]  Thus, as the clear weight of the authority holds, it is proper for the Petitioner to seek a turnover order against the transferees through this motion.

---

[13]     Based on Anza's previous efforts to evade service in this Action Petitioner has requested that the Court permit Petitioner to serve the transferees by alternative means.

## II.   THE COURT HAS PERSONAL JURSIDICTION OVER THE TRANSFEREES

The Federal Arbitration Act (FAA) "bestow[s] no federal jurisdiction but rather requir[es] [for access to a federal forum] an independent jurisdictional basis" over the parties' dispute. *Vaden v. Discover Bank,* 556 U.S. 49, 59 (2009).  Here the jurisdictional basis for the originating Petition is the Parties' diversity.

Where jurisdiction is based on diversity, personal jurisdiction is established by the jurisdictional statues of the state in which the court sits including the state's statutes governing long arm jurisdiction.  *See D.H. Blair & Co. v. Gottdiener,* 462 F.3d 95, 104 (2d Cir. 2006) ("In diversity cases, the issue of personal jurisdiction is governed by the law of the forum state, here, New York's Civil Practice Law and Rules . . . so long as the district court's exercise of jurisdiction comports with the requirements of due process.")

Under CPLR 301, "a defendant is subject to personal jurisdiction if he is domiciled in New York, served with process in New York, or continuously and systematically does business in New York."  *Jonas v. Estate of Leven,* No. 14-CV-3369 SHS, 2015 WL 4522763, at *7 (S.D.N.Y. July 27, 2015) (citing cases).

Officers and directors of corporations are also subject to general jurisdiction pursuant to CPLR § 301 when they engage in business transactions on an individual basis. *Laufer v. Ostrow,* 55 N.Y.2d 305, 313 (1982) ("[E]mployee or agent [of corporation]. . .  subject[s] himself, individually, to the CPLR 301 jurisdiction of our courts . . .  [if] he is doing business in our State individually"); *Optimum Worldwide Ltd. v. Klebener,* No. 95 CIV. 1359 (HB), 1996 WL 71500, at *5 (S.D.N.Y. Feb. 16, 1996) (finding that court had jurisdiction over defendant who, among other things, traveled to New York for two weeks to negotiate a contract spent additional time in New York for another month).

12

Pursuant to CPLR § 302, a non-domiciliary defendant or foreign entity defendant not registered to do business in the state "may be subject to New York's long-arm statute, N.Y. C.P.L.R. § 302, if he engages in the following acts either in person or through an agent *and* such acts relate to an asserted claim: (1) transacts any business within the state or contracts anywhere to supply goods or services in the state; (2) commits a tortious act within the state; (3) commits a tortious act outside the state but injures a person or property in the state; or (4) owns, uses, or possesses any real property in the state. N.Y. C.P.L.R. § 302(a)." *Jonas v. Estate of Leven,* No. 14-CV-3369 SHS, 2015 WL 4522763, at *7 (S.D.N.Y. July 27, 2015).

A. *The Court has Personal Jurisdiction over Joseph V. and Alexandra Anza*

During the time of the majority of the alleged fraudulent conveyances Anza was the sole principal of Anza LLC.  Anza LLC listed its address as 333 East 45th Street, Suite 26A, New York, NY 10017.  This address was also the address of a residential condominium unit owned by Anza individually.  The condo was purchased in 2005 and served as Joseph and Alexandra Anza's residence, for some time, at least until they moved to Connecticut in 2010 or 2011.[14]  *See* Anza Dep. at 85.

The condo was not sold until April 2013.  *See* Gunnell Decl. **Exhibit 16**.  Further, Anza directed and received, and Alexandra Anza received, fraudulent transfers from Anza LLC which Anza operated from New York.[15]  During the time the alleged fraudulent transfers occurred, Anza, as the sole agent of Anza LLC, directed the fraudulent transfers on behalf of Anza LLC,

---

[14]   "[R]esidence is a good jurisdictional basis 'unless the individual's relationship to the state is so attenuated as to make the exercise of such jurisdiction unreasonable.'"  Siegel, N.Y. Prac. § 81 (5th ed.).

[15]   The funds were transferred to an account held in the name of Joseph and Alexandra Anza jointly.  *See* Gunnell Decl. **Exhibit 17**.

conducted business individually and on behalf of Anza LLC in New York, used Anza LLC to pay his own personal expenses in New York, and individually owned real property in New York.

Anza and Alexandra Anza, individually, are also listed on the "New York State Delinquent Taxpayers" list of the "Top 250 Individuals." *See* Gunnell Decl. **Exhibit 18**. Anza is listed as number 16, and Alexandra Anza is listed as number 31. *Id.* The delinquent taxes include both unpaid sales and use tax apparently concerning a previous steel businesses operated by Anza as well as for unpaid personal income tax. *Id.*

Anza works for, and is a 49% minority owner of, Omni Steel, an entity conducting business in Jamaica, New York. *See* Anza Dep. at 19, 26. The underlying contract forming the basis for the dispute in the Arbitration, was signed by Anza on behalf of Anza LLC, and specified New York in the forum selection clause. *See* Docket Entry No. 1, Exhibit A at 4.

Thus, based on Joseph and Alexandra Anza's residency within the state, business conducted within the state, and contacts with the state, it is proper for the court to exercise personal jurisdiction over Joseph and Alexandra Anza pursuant to CPLR § 301. Further, Joseph Anza is independently subject to CPLR § 301 on behalf of the individual transactions he conducted for his benefit while serving as the sole principal of Anza LLC as described herein. In addition, both Alexandra and Joseph Anza are subject to specific long-arm jurisdiction pursuant to CPLR § 302 (a)(2) based on their receipt of fraudulent transfers from Anza LLC. *See* Section II(c), *infra*.

      B.  *The Court has Personal Jurisdiction over Omni Steel Supply LLC*

A foreign corporation that registers to do business in the state consents to jurisdiction in New York, regardless of whether any business is actually conducted in the state. *See Chong v. Healthtronics, Inc*., No. CV-06-1287 SJF MLO, 2007 WL 1836831, at *6 (E.D.N.Y. June 20,

2007) (observing that "majority of federal district courts and New York courts . . . hold that a filing for authorization to do business in New York is sufficient to subject a foreign corporation to general personal jurisdiction [under CPLR § 301] in New York"); *Weisman Celler Spett & Modlin, P.C. v. Trans-Lux Corp.,* No. 12 CIV. 5141 JMF, 2012 WL 5512164, at *2 (S.D.N.Y. Nov. 14, 2012) (same).

Omni Steel is registered with the New York Department of State as a Delaware foreign limited liability company, operates in Jamaica, New York and lists a Bronx address for service of process.  *See* Gunnell Decl. **Exhibit 19**; Anza Dep. at 16-19, 26.

Here, Omni Steel is a foreign entity licensed to do business in New York and has designated a New York address for service of process.  Thus, it is proper for the Court to exercise personal jurisdiction over Omni Steel pursuant to CPLR § 301. *See, e.g., Speed v. Pelican Resort N.V.,* No. 91 CIV. 7686 (SWK), 1992 WL 147646, at *1 (S.D.N.Y. June 16, 1992).  Further, Omni Steel, with its only office in New York, *see* Anza Dep. at 17, 26, systematically and continuously does business within the State and is subject to jurisdiction independently on that basis pursuant to CPLR § 301 and transactions business within the state pursuant to CPLR § 302(a)(1).[16]

## C. *The Court has Personal Jurisdiction over JVA Partners Ltd.*

Between July and September 2013, Anza LLC transferred $16,847.50 directly to JVA Partners.  Between July and September 2013 Anza LLC also transferred $265,000 to the Anza Cyprus Entities of which, between November 2014 and March 2015, $50,000 was, in-turn, syphoned from the Anza Cyprus entities to JVA Partners for Anza's direct use and benefit.

---

[16]     Further, for all the reasons stated in Section II(c), *infra,* CPLR § 302(a)(2) also provides a basis for specific jurisdiction because Omni received fraudulent conveyances directly from Anza LLC in New York.

Anza manages and is the sole signatory on the JVA Partners bank account.  *See* Anza Dep. at 71; Gunnell Decl. **Exhibit 20**.  As explained above, the JVA Trust – a trust set up for the benefit of Joseph Anza –is the sole owner of JVA Partners, which Anza testified is a holding company with no independent business purpose.  *See* Anza Dep. at 53-54.  Thus, Anza as the sole principal of Anza LLC and the sole person responsible for controlling JVA Partner's bank accounts.  Here, the Chase Records show Anza directed $16,847.50 in fraudulent conveyances to JVA Partners for his own use and benefit, and also directed that $50,000 be rerouted from Anza LLC, through the Anza Cyprus Entities, to JVA Partners for his own use and benefit.  *See* Section III (B)(2), *supra*.  In total, Anza has fraudulently transferred $66,847.50 from Anza LLC to JVA Partners.  *See id.*

JVA Partners is thus subject to personal jurisdiction in New York pursuant to CPLR § 302 by virtue of the fact that it transacted purposeful business within the state and committed tortious acts within the state.[17]  *See Morgenthau v. A.J. Travis Ltd.,* 184 Misc.2d 835, 843 (Sup. Ct. 2000) (internal citations omitted) (jurisdiction appropriate under CPLR 302(a)(2) "[s]ince New York was . . . intimately involved in the [fraudulent] conveyance, the alleged tort may be said to have been committed in this State"); *Neilson v. Sal Martorano. Inc.,* 319 N.Y.S.2d 480, 482 (2d Dep't 1971) (New York Long Arm jurisdiction satisfied where alleged fraudulent conveyance constituted tortious act in New York); *Ed Moore Adver. Agency, Inc. v. I.H.R., Inc.,* 494 N.Y.S.2d 400, 401 (2d Dep't 1985) (CPLR 302(a)(2) satisfied where plaintiff alleged defendant California corporation received a fraudulent transfer from New York Corporation); *Klein v. Tabatchnick,* No. 74 CIV. 751 (HRT), 1974 WL 433, at *2 (S.D.N.Y. July 19, 1974)

---

[17]     A cause of action for fraudulent conveyance is a species of tort.  *See Morgenthau v. A.J. Travis Ltd.,* 184 Misc. 2d 835, 843 (Sup. Ct. 2000).

(court "undoubtedly has personal jurisdiction over" defendant pursuant to CPLR § 302(a)(2) for claims alleging "transfer of [ ] assets for less than fair consideration . . . amount to the commission of a tort."); *see also Catauro v. Goldome Bank for Sav.,* 592 N.Y.S.2d 422, 422-23 (2nd Dep't 1993) (holding jurisdiction appropriate under New York Long Arm Statute in conversion action where nondomiciliary recipient transferred funds from New York bank to himself in another state noting  CPLR 302(a)(1) is a "single act statute" where activities are purposeful and there is a substantial relationship between the transaction and the claim asserted); *Chrysler Capital Corp. v. Century Power Corp.,* 778 F. Supp. 1260, 1266 (S.D.N.Y. 1991) ("CPLR 302(a)(2) permits the exercise of jurisdiction over an out-of-state defendant who commits a tortious act within New York either in person or through an agent.").

### III. THE COURT SHOULD ISSUE A TURNOVER ORDER BECAUSE THE TRANFEREES ARE RECIPIENTS OF FRAUDULENT FUNDS

CPLR § 5225 requires a transferee of a judgment debtor's money or property to pay such money or property to satisfy the judgment where the petitioner shows that "the judgment creditor's rights to the property are superior to those of the transferee."  The question of whether a judgment creditor's rights are superior is "determined by applying the fraudulent conveyance provisions of the Debtor and Creditor Law."  *Gelbard v. Esses,* 96 A.D.2d 573, 576 (1983) (*citing* 6 Weinstein-Korn-Miller, NY Civ. Prac., par. 5225.17).

New York Debtor and Credit Law ("DCL") provides, *inter alia*:

Every conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment.

N.Y. Debt. & Cred. Law § 273-a (McKinney).

Thus, to succeed on a DCL § 273-a claim, judgment creditor must show: (1) a conveyance made without fair consideration, (2) that the conveyor is a defendant in an action for money damages or an action has been docketed against him, (3) and that the defendant failed to satisfy the judgment.  *See Dixie Yarns, Inc. v. Forman,* 906 F. Supp. 929, 935 (S.D.N.Y. 1995), *see also Kavanagh v. Rubin,* 230 A.D.2d 892, 893 (2d Dep't 1996) (husband's transfer of realty to wife's estate "without fair consideration, at a time when a money judgment had been entered against him" and at a time when the judgment was not satisfied constitutes a fraudulent conveyance under DCL § 273–a).[18]

A fraudulent conveyance claim may be brought against a defendant who assisted in the fraudulent conveyance where the defendant was itself a transferee or a "***beneficiary of the conveyance***."  *Amusement Indus., Inc. v. Midland Ave. Associates, LLC,* 820 F. Supp. 2d 510, 527 (S.D.N.Y. 2011) (applying New York law) (emphasis added); *see also RTC Mortgage Trust 1995-S/N1 v. Sopher,* 171 F. Supp. 2d 192, 201 (S.D.N.Y. 2001) (same).  Further, where there is a chain of fraudulent transfers involving multiple transactions, subsequent transfers can constitute fraudulent conveyances where there is participation by a common principal in the transfers and the transfers are directly to or for the benefit of such common principal.  *See, e.g., Fed. Nat. Mortgage Ass'n v. Olympia Mortgage Corp.,* No. 04 CV 4971 NG MDG, 2006 WL 2802092, at *10 (E.D.N.Y. Sept. 28, 2006) (allegations that individual was "part owner" of multiple "closely held corporations" involving a "chain of purportedly fraudulent transfers" to the individual sufficiently stated a claim of fraudulent conveyance under New York law); *see*

---

[18]     The transfers at issue also violate DCL § 276 as they were clearly made with the intent to hinder, delay, or defraud either present or future creditors, and DCL § 274 because they left an unreasonably small amount of capital with Anza LLC leaving it unable to pay its legitimate creditors like Petitioner.  The evidence also reflects that Anza LLC may have been insolvent at the time of some or all of the transfers in violation of DCL § 273.

*also, Lyman Commerce Solutions, Inc. v. Lung,* No. 12 CIV. 4398 TPG, 2015 WL 1808693, at

*12 (S.D.N.Y. Apr. 20, 2015) ("§ 273–a may [not] be avoided by simply transferring funds

down the line, from a company to a corporate insider to a third party. . . . [a] subsequent transfer

cannot be a defense when the initial conveyance is fraudulent under the DCL").  Thus, the fact

that Joseph Anza used a network of affiliate entities and/or holding companies, owned or

operated at his direction, to facilitate the fraudulent conveyances at issue does nothing to save

him from liability.

A motion or special proceeding pursuant to CPLR § 5225 "is subject to the same

standards and rules of decision as apply on a motion for summary judgment, requiring the court

to decide the matter upon the pleadings, papers and admissions to the extent that no triable issues

of fact are raised." *Matter of Gonzalez v. City of New York,* 127 A.D.3d 632, 633 (1st Dep't

2015).

For the reasons explained in further detail below, Petitioner has demonstrated that the

transferees have violated Section 273-a and the Court should award individual judgments against

them.  *See Neshewat v. Salem,* 365 F. Supp. 2d 508, 522 (S.D.N.Y. 2005) *aff'd,* 194 F. App'x 24

(2d Cir. 2006) (a court may enter a money judgment against the transferees or persons who were

"involved in and benefited from the fraudulent transfers" in the amount of the fraudulent

conveyance.).

A. <u>*Anza LLC was a Defendant in an Action for Money Damages and has failed to satisfy the*</u>
   <u>*Judgment*</u>

Here, Anza LLC was named as a defendant in the Arbitration on October 5, 2012, the

Arbitration award was issued on February 29, 2014, and this Court entered the Judgment on June

11, 2014.  To date, Anza LLC has not satisfied or made any payments toward the Judgment.

It is "well-established that an arbitration for money damages is an 'action for money damages' within the meaning of DCL section 273–a" *First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc.,* 871 F. Supp. 2d 103, 118 (E.D.N.Y. 2012); *see also Sardis v. Frankel*, 113 A.D.3d 135, 141 (2014) (same)*; Dixie Yarns, Inc.,* 906 F. Supp. at 935 (S.D.N.Y. 1995) (same); *One Hundred Pearl Ltd. v. Vantage Sec., Inc.,* 887 F. Supp. 636, 640 (S.D.N.Y. 1995) (same).

Thus, Anza LLC has been a defendant in an action for money damages since October 5, 2012 and has failed to satisfy the Judgment.

B.   *The Conveyances at Issue were made without Fair Consideration*

New York Debtor and Credit Law "defines fair consideration to comprise two elements—good faith and the payment of a fair equivalent value for the property interest conveyed." *Chen v. New Trend Apparel, Inc.,* 8 F. Supp. 3d 406, 447 (S.D.N.Y. 2014). Where "a corporate insider participates in both sides of the transfer and the insider controls the transferee, the transfer will be deemed to have been made in bad faith if made to a creditor's detriment." *Bernasconi v. Aeon, LLC*, 105 A.D.3d 1167, 1169 (3d Dep't 2013); *see also 112 W. 34th St. Co. v. Shamah*, 45 Misc. 3d 1213(A), at *3 (N.Y. Sup. Ct. 2014) (internal citations omitted) (same); *Berner Trucking, Inc. v. Brown,* 281 A.D.2d 924, 925 (4th Dep't 2001) (Defendants failed to raise issue of triable fact where defendant "president of [judgment debtor]" was an "officer of [transferee]" and "shareholder of both corporations" finding "conveyances made by [judgment debtor] to [defendant] [and] . . . corporation controlled by [defendant], were not made in good faith"); *Chen* 8 F. Supp. 3d at 448 (S.D.N.Y. 2014) ("Transfers to corporate insiders . . . are presumed to be in bad faith."); *Matter of Mogil v. Bldg. Essentials, Inc.,* 129 A.D.3d 1378, 1379 (3rd Dep't 2015) (record supports finding that transfers were not made in

good faith pursuant to Debtor and Creditor Law § 273–a where "transfers resulted in corporate assets going directly to corporate insiders or an entity controlled by a corporate insider"); *Matter of Mega Personal Lines, Inc.* v *Halton,* 9 A.D.3d 553, 555 (3d Dep't 2004) (noting "transfer of corporate assets to an insider establishes a lack of good faith as a matter of law" where "transfer of assets either directly to the insider or to an entity controlled by the insider").

Additionally, intra-familial transfers require extra scrutiny. *See Sardis v. Frankel,* 113 A.D.3d 135, 145 (1st Dep't 2014) (A conveyance between family members is subject to "enhanced scrutiny . . . [and] 'places a heavier burden on defendant to demonstrate fairness'"). In "cases where a conveyance has been made from one family member to another and the facts relating to the type of consideration are within their exclusive control, the defendant has the burden of proving the adequacy of the consideration." *Neshewat v. Salem,* 365 F. Supp. 2d 508, 520 (S.D.N.Y. 2005) *aff'd,* 194 F. App'x 24 (2d Cir. 2006) (internal citations omitted).

1. *The conveyance made by Anza LLC directly to or for the benefit of Joseph V. Anza and Alexandra Anza were made without fair consideration*

Between October 2012 and November 2013, Anza LLC paid $14,669.90 in mortgage payments and $3,770.06 in condo association fees for an apartment owned by Anza personally, $8,116.48 toward the lease of Anza's Audi, and $96,798.42 in payments toward Anza's personal American Express credit card. *See* **Charts 1, 2 and 3**, *supra*. Anza also received transfers individually from the Respondent and made cash withdrawals totaling $5,000, and went on a lavish trip to Europe on Anza LLC's dime totaling $15,860.36. *See* Gunnel Decl. **Exhibits 6-7, and 9**. Thus, after Anza LLC was a defendant in the Arbitration, Anza LLC transferred a total of $144,215.22 for the direct and personal benefit of Anza.

The mortgage payments and condo association payments were made on a residential condo united located in New York City, owned individually by Anza. *See* Anza Dep. at 87-88;

Gunnell Decl. **Exhibit 16** at 1,7.  Anza sold the condo in April 2013 for $638,000, and Anza personally retained the proceeds of the sale.[19]  *Id.*

Anza admitted at his deposition that the Audi was in his name and that he used it personally.  *See* Anza Dep. at 88, 90.  Anza also admitted that Anza LLC did not have an American Express credit card but that he personally had an American Express credit card.  *See* Anza Dep. at 66-67, 82-83.  Further, Anza directly received $2,000 from Anza LLC to his own personal bank account that he could not explain and withdrew $3,000 in cash from Respondent. *See* Anza Dep. at 113-114, Gunnell Decl. **Exhibit 6-7**.  Anza LLC also paid for a vacation to Europe involving apparent stopovers in Greece, Rome, Tuscany, and Budapest, for Anza and his wife totaling $15,586.54 between travel expenses including luxury hotels.  *See* Gunnell Decl. **Exhibit 9**.

Thus, $144,215.22 was transferred from Anza LLC either directly to, or for the benefit of, Anza, an insider.  Accordingly these transfers occurred without fair consideration and are presumptively fraudulent.

In addition, Alexandra Anza received $2,000 directly from Anza LLC to an account held in her name and in the name of Joseph Anza.  At his deposition Anza stated that this $2,000 was provided to Alexandra Anza for simply responding "yes" to invitations to events and parties.  *See* Anza Dep. at 110.  Because this transfer was an intra-familial transfer with no evidence of

---

[19]     Anza's characterization of the payments towards the residential condo as "rent" is insufficient to create an issue of fact on fair consideration.  *See, e.g., Murin v. Estate of Schwalen,* 31 A.D.3d 1031, 1035 (3d Dep't 2006) (conclusory and undocumented allegations as to both the existence of the debt and the circumstances under which it was incurred are insufficient to raise a question of fact as to fair consideration); *Rampello v. Cioffi,* 282 A.D.2d 442, 443 (2nd Dep't 2001) (Reversing lower court and awarding summary judgment on fraudulent conveyance claims noting conclusory affidavits are insufficient to raise an issue of fact on whether the conveyance was supported by fair consideration).

tangible consideration, it is presumptively fraudulent.  Additionally, because Joseph Anza is also

a signatory on the account that received this transfer, the transfer is also presumed fraudulent as a

transfer directly to Anza as an insider of Anza LLC.[20]

      For these reasons the transfers in the amount of **$146,215.22** from Anza LLC either

directly to, or for the direct benefit of, Anza are presumptively fraudulent, this amount includes

the **$2,000** transfer to the joint bank account Anza holds with Alexandra Anza, which is also

presumptively fraudulent as to Alexandra Anza.[21]

        2.   *The conveyance made by Anza LLC to JVA Partners directly and indirectly*
            *through the Anza Cyprus Entities were made without fair consideration*

      After the arbitration was filed, Anza LLC, at the direction of Anza, made payments

totaling $16,847.50 to JVA Partners, a holding company owned by a trust set up for the sole

benefit of Anza.  *See* Anza Dep. at 53-54, Gunnell Decl. **Exhibit 11**.  Anza testified that JVA

Partners is a "holding company" with no independent business purpose.  *See id*.  Further, Anza

manages and is the sole signatory on the JVA Partners' bank account.  *See id*. at 71, Gunnell

Decl. **Exhibit 20.**

---

[20]    Further, such grossly inadequate consideration cannot constitute "fair consideration" as a matter of law.  *See, e.g., Fed. Nat. Mortgage Ass'n v. Olympia Mortgage Corp.,* 792 F. Supp. 2d 645, 651 (E.D.N.Y. 2011) ("value of the consideration may not be disproportionately small when compared with the value of the conveyance.")

[21]    Anza is unable to rebut this presumption as a matter of law, this is because Petitioner issued document requests to Anza and Anza LLC seeking, *inter alia*, documents "concerning any transfer or sale of any asset" of Anza LLC. *See* Gunnell Decl. **Exhibit 21**. The only documents provided in response were limited bank statements, tax returns a complaint in another lawsuit involving Anza LLC and a Limited Liability Company Agreement for "Anza-Atco Metal Investment LLC." *See* Gunnell Decl. ¶ 30.  At his deposition Anza testified that although Anza LLC's documents were "stored in Macedonia" that all documents responsive to Petitioner's requests were produced. *See* Anza Dep. at 21-31.  Thus, according to Anza, no documents exist that can be produced by Anza or Anza LLC to rebut the presumption that the transfers by Anza LLC were fraudulent.

At this deposition, Anza was unable to explain these transfers in any detail.  *See* Anza Dep. at 98-102.  Anza admitted that Anza LLC did not receive any goods in exchange for these payments and could not identify any services received by Anza LLC from JVA Partners in exchange for the payments.  *See id.*

Because these transactions totaling **$16,847.50** were made by Anza LLC, after Anza LLC was named a defendant in the Arbitration at the direction of Anza, to JVA Partners, an entity owned by a trust set up for Anza's sole benefit, and whose bank accounts are solely controlled by Anza, these transactions are presumed fraudulent.

Further, Anza LLC and JVA Partners' bank records reveal that Joseph Anza also made fraudulent conveyances to JVA Partners from Anza LLC, using the Anza Cyprus Entities as pass-through entities to facilitate the fraudulent transactions.  *See* **Figure 1** and **Chart 6**, *infra*.  It is clear that Anza directed that $50,000 be rerouted from Anza LLC, through the Anza Cyprus Entities, to JVA Partners after Anza LLC was named a defendant in the Arbitration.  Anza LLC never received any goods or services from the Anza Cyprus Entities.  *See* Anza Dep. at 104-105. For the same reasons explained above, these transfers to JVA Partners by Anza LLC through the Anza Cyprus entities are presumptively fraudulent.

Thus, to date and in total, JVA Partners has received **$66,847.50** in fraudulent conveyances either directly from Anza LLC or indirectly from Anza LLC through the Anza Cyprus Entities.

Despite these transfers, as of February 2015, JVA Partners had less than $5,000 in its bank account.  *See* Gunnell Decl. **Exhibit 22**.  However, it is clear that Anza uses his JVA Partners "holding company" to make payments at his direction for his own personal benefit and enjoyment.  For example Anza deposited the witness fee issued to him for his deposition in this

24

action into the JVA Partners account.  *See* Anza Dep. at 71-72; Gunnell Decl. **Exhibit 23**.  Anza

is also the only signatory on the JVA Partners bank account, and its bank records reflect that the

entity pays thousands of dollars per month towards personal expenses for Anza and his family

including, *inter alia*, bars, restaurants, Cablevision, Verizon Wireless, Vonage Phone Services,

Green's Farm Nursery School, Mercedes Benz, Lowe's Home Improvement, Home Depot,

Seamless Web, Splatterbox Children's Art Studio, Stop and Shop, Wholefoods, ShopRite,

Starbucks, the Apple store, 1-800 Contacts, Amazon.com, RiteAid, Wal-Mart, Pandora Jewelry,

Geico Auto Insurance, and D&L Dental Associates – just to name a few.  *See* Gunnell Decl.

**Exhibit 24**.  These are not business-related expenses for a "holding company."  Thus, although

the funds fraudulently conveyed to JVA Partners by Anza LLC have apparently been dissipated

by Anza, he is individually liable for these conveyances (jointly and severally with JVA

Partners) in the amount of **$66,847.50** since they were ultimately used for his benefit and at his

direction.

        a.  <u>JVA Partners Ltd. is the Alter Ego of Anza</u>

      In addition to the $66,847.50 in fraudulent conveyances JVA Partners received directly or

indirectly from Anza LLC, JVA Partners, as Anza's alter ego, should be held liable for Anza's

other fraudulent conveyances.  "[A] turnover proceeding may be used by a judgment creditor to

litigate a veil piercing claim or a claim that the third party is in possession of money as an alter

ego of the judgment debtor."  *Zohlman v. Zoldan,* No. 0603619/2007, 2008 WL 4000104 (2008)

(Sup. Ct. 2010); *see also Trust v. Kummerfeld,* 153 F. App'x 761, 762-63 (2d Cir. 2005) ("veil-

piercing action was properly brought as a special proceeding under CPLR § 5225"); *Mitchell*,

727 F. Supp. 2d at 123  ("[CPLR § 5225] may be used to pierce the corporate veil or assert alter

ego liability"); *Matter of WBP Central Assocs., LLC v. DeCola,* 50 AD3d 693 (2d Dep't 2008) (a

petitioner "may litigate, in a special proceeding pursuant to CPLR 5225 (b), its alter ego[]
[claims] . . . and that the corporate veil may be pierced.").

"Alter ego liability is established where a petitioner can show complete domination of the
corporation . . . in respect to the transaction attacked" and "that such domination was used to
commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury." *Baby Phat
Holding Co., LLC v. Kellwood Co.,* 123 A.D.3d 405, 407 (1st Dep't 2014).

Here, as further explained above, JVA Partners is a "holding company" with no
independent business purpose that Anza manages and uses to make payments at his direction for
his own personal benefit and enjoyment.  *See* Section III(B)(2), *supra*.  Quite simply, as the
evidence reflects, JVA Partners is Anza's personal piggy bank that he attempts to operate outside
of the reach of creditors.  *Id.*

Because Anza exercises complete control and dominance over JVA Partners and he has
used JVA Partners to move funds originating with Respondent outside the reach of legitimate
creditors, the Court should hold JVA Partners accountable for any individual judgment against
Anza.  *See Motorola Credit Corp. v. Uzan*, 739 F. Supp. 2d 636, 639 (S.D.N.Y. 2010) (finding
alter ego and veil piercing established where court made finding, *inter alia*, that defendants
"shift[ed] funds between various corporations under their direction and control to avoid
creditors").[22]

---

[22]     Moreover, the evidence set forth in the Attachment and Turnover Motions establish that
Anza LLC is also an alter ego of Joseph V. Anza, and thus, Joseph V. Anza is liable for the full
amount of the judgment against Anza LLC.

      b.  <u>The Court Should Permit Petitioner to Recover Additional Monies from JVA</u>
<u>Partners through Reverse Veil-Piercing</u>

Similarly, the Court should permit Petitioner to recover from JVA Partners those

fraudulent conveyances effected by Anza pursuant to the reverse veil-piercing doctrine.  A "party

seeking to pierce the corporate veil must . . .  establish that the owners, through their domination,

abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice

against that party such that a court in equity will intervene."  *Hyland Meat Co. v. Tsagarakis,*

202 A.D.2d 552, 552, 609 N.Y.S.2d 625, 626 (2nd Dep't 1994) (*citing Morris v. New York State*

*Dep't of Taxation & Fin.,* 82 N.Y.2d 135, 142 (1993)).  "New York law also recognizes a so

called 'reverse' veil-piercing doctrine, pursuant to which a party attempts to hold a corporation

accountable for the actions of its parent or shareholders. The legal standard for reverse piercing

is the same as that applied in the traditional veil-piercing context."  *Ross Univ. Sch. Of Med., Ltd.*

*v. Brooklyn-Queens Health Care, Inc.*, No. 09-CV-1410 KAM, 2012 WL 6091570, at *22

(E.D.N.Y. Dec. 7, 2012) (collecting cases) *report and recommendation adopted in part,* No. 09-

CV-1410 KAM RLM, 2013 WL 1334271 (E.D.N.Y. Mar. 28, 2013).[23]  Moreover, veil piercing

may be asserted against limited liability partnerships such as JVA Partners.  *See, e.g., UBS Sec.*

*LLC v. Highland Capital Mgmt., L.P.,* 93 A.D.3d 489, 490 (1st Dep't 2012) (veil-piercing claim

sufficiently alleged against defendant limited partnership).

---

[23]    Further, "triangular" veil-piercing "occurs when a controlled corporation is held liable for
the debts of an affiliated corporation, through an intermediary controlling shareholder. The
liability flows in a triangle, first from the controlled corporation to the controlling shareholder,
then from the controlling shareholder to the affiliated corporation."  *See* Matthew D. Caudill,
*Piercing the Corporate Veil of A New York Not-for-Profit Corporation,* 8 Fordham J. Corp. &
Fin. L. 449, 469 (2003).  Thus, based on triangular veil-piercing it is appropriate to reach JVA
Partners' assets based on the existing Judgment against Anza LLC through its controlling
intermediary Anza.

For all the reasons stated above Anza has clearly abused and dominated JVA Partners and has used it to perpetrate a wrong against Petitioner.  Thus, the Court should reverse pierce JVA Partners' partnership veil and hold JVA Partners accountable for any individual judgment against Anza.

### 3.  The conveyances made by Anza LLC to Omni Steel Supply LLC were fraudulent

Between December 2012 and July 2013, after Anza LLC was named as a defendant in the Arbitration, Anza LLC made three transfers totaling **$65,000** to Omni Steel, an entity owned by Anza and his brother and formed in April 2011 shortly before the Arbitration was filed.  *See* **Chart 7**, *infra*.

At his deposition, Anza was unable to recall any transfers between Anza LLC and Omni Steel or explain them in any detail.  *See* Anza Dep. at 90-93.  He also admitted that Anza LLC and Omni Steel did not do business together.  *See id.* at 90.[24]  Thus, the transfers to Omni Steel constitute a transfer to and from a corporate insider, Anza (as a major shareholder of both Anza LLC and Omni Steel), as well as an intra-familial transfer without fair consideration, as Omni Steel is owned 51% by and controlled by Anza's brother, both of which independently render the transfers subject to heightened scrutiny and render them presumptively fraudulent.[25]

---

[24]     Although, Anza testified that he recalled a single occasion where Anza LLC "scrap[ped]" stainless steel doors for Omni Steel, and another occasion where Omni Steel sold "aluminum siding" to Anza such vague and conclusory testimony on fair consideration is insufficient to create a fact issue, especially here where there are four separate transactions.  *See, e.g., Murin,* 31 A.D.3d at 1035; *Rampello*, 282 A.D.2d at 443.  Further, nonsensically, Anza explained that although aluminum siding and stainless steel scrap was "sold to Anza" that Anza LLC actually "took care of the selling for Omni" and when pressed further stated he did not "remember the details of the transactions."  *See* Anza Dep. at 93.

[25]     *See Am. Federated Title Corp. v. GFI Mgmt. Servs., Inc.,* No. 13-CV-6437 KMW, 2015 WL 5091113, at *10 (S.D.N.Y. Aug. 28, 2015) (referring to insider as "officer, director, or major shareholder.")

In addition, Omni Steel received two transfers directly from JVA Partners in the amount of **$35,000** in October 2013 (after the fraudulent transfers were made from Anza LLC to JVA Partners), *see* Gunnell Decl. **Exhibit 25**, and thus, Omni Steel is also liable to Petitioners for receipt of those transfers as a subsequent transferee of the fraudulently conveyed funds. *See Fed. Nat. Mortgage Ass'n.,* No. 04 CV 4971 NG MDG, 2006 WL 2802092, at *10; *Lyman Commerce Solutions, Inc.,* No. 12 CIV. 4398 TPG, 2015 WL 1808693, at *12.

Thus conveyances of **$65,000** from Anza LLC to Omni Steel and from JVA Partners to Omni Steel in the amount of **$35,000**, a total of **$100,000**, were presumptively fraudulent transfers.

Because Anza participated as a corporate insider in both sides of these transactions and the funds have since been dissipated by Omni Steel, Anza is individually liable for these conveyances (jointly and severally with Omni Steel) in the amount of **$100,000**.

## CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that the Court enter an order in the amount of **$278,062.72**, the full amount of the fraudulent transfers outlined above. This amount includes the outstanding judgment ($238,949.84), plus additional reasonable attorneys' fees of $24,282.50 that have already been incurred by Petitioner,[26] post-judgment interest

---

[26]     Here it is clear that the Anza and the transferees, all controlled by or heavily affiliated with Anza, acted with intent to hinder, delay or defraud the Petitioner and thus an award of reasonable attorney fees is appropriate. *See Dixie Yarns, Inc.*, 906 F. Supp. at 938 (S.D.N.Y. 1995) (awarding attorney's fees and noting "New York cases support the proposition that a claim for attorney's fees . . . may properly accompany a claim under § 273-a"); *Eckhaus v. Blauner*, No. 94 CIV. 5635 (CSH), 1997 WL 362166, at *9 (S.D.N.Y. June 26, 1997) ("a defendant's fraudulent intent may be inferred from the surrounding circumstances, [such] that defendant will be liable for the successful plaintiff's attorney's fees" appended to a § 273–a claim). Upon request, Petitioner will provide support for an award of reasonable attorney fees.

(approximately $2,794.69),[27] and approximately $12,035.69 in anticipated reasonable attorney fees in bringing this action to conclusion, apportioned as followed:

    a) Joseph V. Anza and JVA Partners Ltd. (as the alter ego of Anza) in the amount of **$144,215.22**;

    b) Joseph V. Anza, JVA Partners Ltd. (as the alter ego of Anza) and Alexandra Anza, jointly and severally, in the amount of **$2,000**;

    c) Joseph V. Anza, JVA Partners Ltd. (as the alter ego of Anza) and Omni Steel Supply LLC in the amount of **$65,000**;

    d) Joseph V. Anza,  JVA Partners Ltd., and Omni Steel Supply LLC, jointly and severally, in the amount of **$35,000**; and

    e) Joseph V. Anza and JVA Partners Ltd., jointly and severally, in the amount of **$31,847.50**.[28]

---

[27]     This amount is calculated as of June 13, 2016 and is based on the U.S. Treasury constant maturities nominal one year interest rate of .59% for the week ending June 10. 2016.

[28]     Based on the above joint and several apportionments the maximum amount each transferee can be held liable for is as follows:

| | | |
|---|---|---|
| Joseph V. Anza | – | $278,062.72 |
| JVA Partners, Ltd. | – | $278,062.72 |
| Alexandra Anza | – | $2,000 |
| Omni Steel Supply LLC | – | $100,000 |

In the event the Court finds reverse veil piercing is not appropriate and that JVA Partners is not the alter ego of Joseph V. Anza, JVA Partners is nonetheless directly liable for $66,847.50 in fraudulent conveyances.

30

Dated: New York, New York
       June 13, 2016

                              SHER TREMONTE LLP


                              By:   /s/ Justin M. Sher
                                    Justin M. Sher
                                    Justin J. Gunnell
                              80 Broad Street, 13th Floor
                              New York, New York 10004
                              Tel: 212.202.2600
                              Email: jsher@shertremonte.com
                              Email: jgunnell@shertremonte.com

                              *Attorneys for Petitioner Tube City IMS, LLC*